IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **IBERIA RISK SERVICES,**<br><br>    **Intervenor Plaintiff,**<br><br>    v.<br><br>**SCOTT & SONS HOLDINGS, LLC,** et al.,<br><br>    **Defendants.** | 1:11-cv-02261-WSD |

**OPINION AND ORDER**

This matter is before the Court on Intervenor Plaintiff Iberia Risk Services' ("Plaintiff") Motion for Summary Judgment against Defendants on its equitable subrogation claim [48].

**I.    BACKGROUND**

In the beginning of 2008, Ullico Casualty Company ("Ullico") hired Plaintiff to serve as a managing general underwriter for Ullico's surety business. Defendants Kashka Scott, Shields Scott, and Jerome Scott own and operate Defendant Scott & Sons Holdings, LLC (collectively, "Defendants"), a construction company based in Atlanta, Georgia. In July 2008, Plaintiff underwrote and issued surety bonds, on behalf of Ullico, to Defendants in the

amount of $3,788,360.18 to develop sidewalks and pedestrian safety upgrades in DeKalb County, Georgia, for the Georgia Department of Transportation ("GDOT"). On April 30, 2008, the Defendants entered into a General Indemnity Agreement ("GIA") with Ullico that provides:

> The Undersigned agree to indemnify and hold [Ullico] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon at the maximum rate allowed by law, which arise by reason of, or in consequence of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof, including but not limited to . . . [s]ums paid including interest thereon at the maximum rate allowed by law, or liabilities incurred in the settlement or the adjustment of any and all claims, demands, damages, costs, losses, suits, proceedings, or judgments . . .

See Pl.'s Ex. B, Kashka S. Dep., Exhibit 1 at 1. The GIA also granted Ullico the "right in its sole and absolute discretion to determine whether any claims under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted or appealed," and "the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expenses for investigative, accounting, engineering and legal services." Id.

Ullico received claims on the surety bonds after the Defendants failed to pay their subcontractors for work completed on the sidewalks and pedestrian safety

upgrades in DeKalb County, Georgia. Ullico ultimately paid $1,461,296.13 to investigate and settle the subcontractors' claims. Ullico recovered $221,801.57 in contract proceeds, and absorbed a loss of $1,239,494.56 on the surety bonds issued to Defendants. To date, Defendants have not paid the amount owed under the surety bonds, and Defendants failed to indemnify Ullico for its losses under the GIA.

On July 11, 2011, Ullico filed a two (2) count Complaint against the Defendants for breach of the GIA, seeking to recover from Defendants the amount owed under the surety bonds and attorneys' fees and costs. Ullico also hired a private arbitration panel to arbitrate its claims against Plaintiff. In the arbitration proceedings, Ullico alleged that Plaintiff failed to implement a condition that required a $1,000,000 line of credit to be procured for the Defendants before the surety bonds could be issued for the DeKalb County project. Ullico argued that if this condition had been implemented, Ullico would have been protected from the losses sustained on the surety bonds. After a four-day hearing, the arbitration panel awarded $1,239,494.56 to Ullico for the losses sustained on the surety bonds.

On March 18, 2013, Plaintiff moved to intervene in this action to seek indemnification or contribution from the Defendants. On September 30, 2013, the Court granted Plaintiff's Motion to Intervene in this action. On October 11, 2013,

Plaintiff filed a Complaint against the Defendants seeking subrogation in the place of Ullico to recover $1,239,494.56 in losses sustained on the surety bonds. On October 16, 2013, Ullico moved to dismiss its claims against the Defendants pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. On November 21, 2013, the Court granted Ullico's Motion for Voluntary Dismissal, and dismissed Ullico's claims against Defendants without prejudice.

On February 3, 2014, Plaintiff moved for summary judgment on its equitable subrogation claim. Plaintiff argues that it is entitled to indemnification from the Defendants because Plaintiff paid $1,239,494.56 to Ullico for losses incurred on the surety bonds. Plaintiff contends that it is subrogated to the rights of Ullico and thus entitled to enforce Defendants' liability for losses incurred on the surety bonds.

## II.   DISCUSSION

### A.   Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here

5

the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.     Analysis

Under Georgia law[1], equitable subrogation is "the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt, or

---

[1] In a case based on diversity jurisdiction, the district court must apply the forum state's choice of law rules. McGow v. McCurry, 412 F.3d 1207, 1217 (11th Cir. 2005). The GIA provides that it shall be governed by and construed in accordance with the laws of the State of Minnesota. Minnesota law does not recognize a claim for contractual subrogation by one who is not a party to, or who is not an assignee or third party beneficiary of an agreement. RAM Mut. Ins. Co. v. Rohde, 820 N.W.2d 1, 6 n.2 (Minn. 2012) (holding that a right to conventional subrogation is "created by a contractual agreement between an insured and an insurer that the party paying the debts will have the rights and remedies of the original creditor.") (citations omitted). "A choice of law provision that relates only to the agreement will not encompass" related claims. Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009). The choice of law provision in the GIA relates only to the breach of the agreement itself. Plaintiff cannot bring claims based on the GIA because it was not a party to, or an assignee or third party beneficiary of the GIA. Plaintiff, however, also asserts a claim for subrogation as a matter of equity, and that subrogation claim arises from Defendants' failure to pay the amounts they owe on surety bonds issued to them for a construction project in Georgia. The GIA choice of law provision does not apply to this non-GIA claim. The Court concludes that Georgia law applies to Plaintiff's equitable subrogation claim. See Federated Rural Elec. Ins. Exchange v. R.D. Moody and Assoc., Inc., 468 F.3d 1322, 1326 (11th Cir. 2006) (applying Georgia law because plaintiffs did not sue for breach of contract, and the subrogation claim arose from acts committed in Georgia).

claims, and its rights, remedies, or securities." Jones Motor Co. v. Anderson, 602 S.E.2d 228, 230 (Ga. App. 2004) (citations omitted). "It is of equitable origin, being founded upon the dictates of refined justice, and its basis is the doing of complete, essential, and perfect justice between the parties, and its object is the prevention of injustice." Id. Subrogation can arise from equity, statute or contract. Id. "Legal subrogation takes place as a matter of equity, without any agreement to that effect." Id.

The party who pays off the debt of a senior creditor is able to step into the shoes of the senior creditor whose debt was satisfied. Byers v. Mcguire, 679 S.E.2d 1 (Ga. 2009). "The party subrogated acquires all the rights, securities, and remedies which the creditor has against the debtor who is primarily liable." Maryland Cas. Co. v. Brown, 321 F. Supp. 309, 311 (N.D. Ga. 1971) (citations omitted). Subrogation is not available for the "mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own." Bankers Trust Co. v. Hardy, 640 S.E.2d 18, 21 (Ga. 2007).

To plead a claim for equitable subrogation, a party is required to show that (1) it paid a debt in order to protect its own interest, (2) it was not acting as a

volunteer in making the payment, (3) it was not primarily liable for the debt, (4) the entire debt was paid, (5) and subrogation would not cause an injustice to the rights of third parties.  In re Celetox Corp., 472 F.3d 1318, 1323 (11th Cir. 2006).

Each element for an equitable subrogation claim is met in this matter. Plaintiff paid $1,239,494.56 on the surety bonds that were issued to, and for the primary benefit of, Defendants in connection with the construction project in DeKalb County, Georgia.  This amount consisted of the entire debt Defendants owed to Ullico.  Plaintiff made the payment having been required in an arbitration agreement to pay to Ullico the amount it had paid on Defendants' behalf under the surety bond—payment for which Defendants were the direct beneficiary.  The payment made by Plaintiff was not voluntary.[2]  See 915 Indian Trial, LLC v. State Bank and Trust Co., 2014 WL 2975940, at *4 (Ga. App. Ct. July 3, 2014) (holding that the bank met the prima facie requirement of establishing a right to equitable subrogation because it used proceeds from a loan to pay off the senior lien in full); Secured Equity Fin., LLC v. Washington Mutual Bank, F.A., 666 S.E.2d 554, 557 (Ga. App. Ct. 2008) (finding that Washington Mutual met the prima facie requirements for equitable subrogation because it paid off a prior encumbrance,

---

[2] Defendants do not claim that Plaintiff is a "mere stranger or volunteer" to whom equitable subrogation is not available here.

and the application of equitable subrogation did not prejudice the rights of the senior lien holder).

It is undisputed that the surety bonds were issued for the benefit of Defendants in connection with the DeKalb County project.  Defendants do not dispute their responsibility for any liability that Ullico, and now Plaintiff, incurred under the surety bonds for payments made on their behalf on the project.  Defendants expressly agreed to indemnify Ullico for "[s]ums paid including interest thereon at the maximum rate allowed by law, or liabilities incurred in the settlement or the adjustment of any and all claims, demands, damages, costs, losses, suits, proceedings, or judgments."  See Pl.'s Ex. B, Kashka S. Dep., Exhibit 1 at 1.  Ullico received payment from Plaintiff for the losses Ullico incurred on the surety bonds.  Subrogation of the right to enforce Defendants' obligation in this matter does not prejudice the rights of another lienholder or any other third party that is owed a debt.

Defendants contend they are not liable to Plaintiff for the amount paid on their behalf under the surety bonds because "any payment made by [Plaintiff] was based on its own negligence."  Def.'s Resp. to Mot. for Summ. Judgment at 6.  Ordinary negligence, however, does not defeat an equitable subrogation claim in the absence of culpable or inexcusable neglect.  915 Indian Trial, LLC, 2014 WL

2975940, at *4 (holding that constructive notice of a senior lien, or the failure to conduct a post-closing title exam and monitor deed records does not present an issue of fact regarding inexcusable neglect); see also Byers v. McGuire Properties, Inc., 679 S.E.2d 1, 9 (Ga. 2009) (holding that "evidence that closing attorneys may have had some inquiry notice prior to closing fails to show actual knowledge by SunTrust, and thus, cannot create a jury issue regarding culpable or inexcusable neglect."). Culpable or inexcusable neglect are not alleged here.

In Citifinancial Services, Inc. v. Varner, the plaintiff argued that the bank engaged in inexcusable neglect because it failed to perform a title examination that would have shown the existence of plaintiff's quitclaim deed and interest in the property. 739 S.E.2d 477, 479 (Ga. App. Ct. 2013). The Court of Appeals held that "constructive knowledge of the quitclaim deed [was] not fatal to the bank's equitable subrogation claim" because the bank did not have actual knowledge of the plaintiff's alleged interest in the property. Id. The Court of Appeals further held that "knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing money to pay off the senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer." Id. Because the application of equitable subrogation would not prejudice the rights of

another lien holder, the Court concluded that "even if the [b]ank erred in overlooking the quitclaim deed in a title examination, such error would not be egregious enough to defeat a claim for equitable subrogation." Id. at 480.

The arbitration proceeding involving Plaintiff and Ullico was convened to consider whether Plaintiff or Ullico should bear the losses sustained on the surety bonds because of Defendants' default. Koch Aff. at ¶¶ 10-13. Plaintiff issued surety bonds to the Defendants in the amount of $3,788,368.18. Koch Aff., Ex. 1 at 4. The issuance exceeded Plaintiff's $2,000,000.00 authority to issue surety bonds, and thus required Plaintiff to request "overline authority" from Ullico to issue the bonds. Id. Ullico agreed to provide Plaintiff with the authority to issue surety bonds to the Defendants if a third party provided a $1,000,000 line of credit to the Defendants. Id.

In the arbitration proceedings, Plaintiff argued that this condition was waived by Ullico in a short telephone conversation. Id. at 5. Ullico denied that it waived the condition. Id. The arbitration panel considered the conflicting testimony and exhibits, and concluded that Ullico did not waive the overline condition, and awarded $1,239,494.56 to Ullico. Id. at 5-6. Plaintiff paid to Ullico the amount awarded by the arbitration panel. Koch Aff. at ¶¶ 10-13.

The arbitration panel did not determine or consider whether Defendants

were primarily liable for the unpaid amounts owed on the surety bonds. Defendants do not assert, and the evidence before the arbitration panel does not show, that Plaintiff knowingly exceeded its authority when it issued the surety bonds.  See Citifinancial Services, Inc., 739 S.E.2d at 479.  Even if the Court assumes that Plaintiff's decision to issue the surety bonds constituted inexcusable neglect—which the Court concludes it did not—the application of equitable subrogation in this case "will not in any substantial way prejudice the rights of [another debt holder]." Id. at 480.  Plaintiff ultimately paid the entire debt owed to Ullico under the surety bonds in the amount of $1,239,494.56, and Ullico voluntary dismissed its claims against Defendants because it has been made whole and cannot seek a double recovery.  Ullico's rights, therefore, will not be prejudiced in any way if equitable subrogation is applied in this case to enforce Defendants' obligation to pay the amount they owe on the surety bonds—an amount that in the end was incurred by Plaintiff and for which they are entitled to be repaid by Defendants.

Defendants remain primarily liable for the unpaid amounts on the surety bonds because the bonds were issued for their benefit, and Defendants breached their agreement to indemnify Ullico for the unpaid amount on the surety bonds. Defendants do not cite to any authority, and the Court is not aware of any, that

allows Defendants to receive a windfall because Plaintiff allegedly breached some duty owed to Ullico.  The alleged breach of a duty owed to Ullico does not bear on Defendants' primary liability on the surety bonds.

"The courts incline rather to extend than restrict [equitable subrogation]. The doctrine has been steadily growing and expanding in importance, and becoming general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances as they have arisen."  Byers, 679 S.E.2d at 8 (internal citations and quotation marks omitted).  "[I]t is within the sound discretion of a court to allow a new creditor to succeed to the secured rights of a prior creditor if the underlying facts reveal that such a result would accomplish fairness as among all parties and avoid windfall benefits."  In re Siskey Hauling Co., Inc., 456 B.R. 597, 604 (Bankr. N.D. Ga. 2011).  The Court concludes that the application of equitable subrogation is appropriate in this case to accomplish fairness between the parties, and to avoid giving Defendants an unjustified windfall.

Defendants next argue that Plaintiff is not the real party in interest, and thus cannot bring these claims against Defendants.  Defendants claim that Plaintiff is required to assert this action "in the name of the creditor, specifically Ullico," and its failure to do so renders the claim unenforceable.  Def.'s Resp. to Mot. for

Summ. Judgment at 6. Equitable subrogation, by definition, allows the Plaintiff to acquire all the rights Ullico had against the Defendants, and file an indemnification claim to recover for unpaid debts that Defendants are primarily liable for. "By payment [Plaintiff] was subrogated to all of the creditor's rights. There is [thus] no doubt that [Plaintiff] was the real party in interest." Hogan v. Maxey, 174 S.E.2d 208, 209 (Ga. App. Ct. 1970).

### III. CONCLUSION

Accordingly, for the foregoing reasons, and on the undisputed facts here,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment on its equitable subrogation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Plaintiff and against Defendants in the amount of $1,239,494.56.

**SO ORDERED** this 6th day of August 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE